UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DOLLAR DEVELOPMENT I, LLC,

       Plaintiff,

v.                                                                                    Case No. 1:05-CV-858

VILLAGE GREEN PROPERTIES, LTD.,                          HON. GORDON J. QUIST

       Defendant.

_____/

## OPINION

Plaintiff, Dollar Development I, LLC ("Dollar Development"), filed this diversity action against Defendant, Village Green Properties, Ltd. ("Village Green"), seeking equitable relief pursuant to M.C.L. § 600.2932 to quiet title to a disputed easement and alleging claims for slander of title and tortious interference with a business relationship, both of which arise out of Village Green's filing of a notice stating that the easement was terminated. Now before the Court are Dollar Development's motion for summary judgment and Village Green's counter-motion for summary judgment. Oral argument on these motions was originally set for March 3, 2006, at 10:00 a.m., but due to a conflict with a pending criminal matter, the Court adjourned the hearing without date. Having fully reviewed the parties' submissions, however, the Court finds that oral argument is not necessary to the Court's understanding and disposition of the motions. For the reasons set forth below, the Court will grant Dollar Development's motion with regard to its quiet title claim; grant in part and deny in part its motion with respect to the slander of title claim; and deny its motion with respect to the tortious interference claim. The Court will also deny Village Green's motion.

## I.  **Facts and Procedural History**

On or about July 16, 1980, Village Green sold to FNC Realty Corporation, f/k/a Frank's

Nursery & Crafts, Inc. ("FNC" or "Frank's"), the property commonly known as 325 Mall Drive,

Portage, Michigan, and more specifically described as follows (the "Frank's Parcel"):

> Commencing at the East quarter post of Section 9, Town 3 South, Range 11 West,
> City of Portage, Kalamazoo County, Michigan; thence North 0°08' West 662.92 feet
> to the Southerly line of Mall Drive as extended Easterly; thence North 89°56'30"
> West 678.00 feet to the place of beginning; thence continuing North 89° 56'30" West
> 197.00 feet; thence South 0°08' East 220.0 feet; thence South 89°56'30" East 197.00
> feet; thence North 0°08' West 220.0 feet to the place of beginning.

Village Green owned, and continues to own, property adjacent to the Frank's Parcel that consists

of a paved driveway and parking lot area (the "Parking Parcel").  In connection with the sale of the

Frank's Parcel, Village Green and Franks entered into a Parking Easement Agreement (the

"Agreement"), pursuant to which   Village Green granted to FNC "a perpetual non-exclusive

easement on, over and across the PARKING PARCEL . . . together with the right to . . . maintain

all of said PARKING PARCEL for the purposes of parking and/or driveways."[1]  (Agreement ¶ 1.)

The Agreement was recorded on August 1, 1980 in Liber 1099, Page 185, of the Kalamazoo County

Register of Deeds.[2]

---

[1]Osco Drug, Inc., a lessee of property under a lease with Village Green, and Irwin M. Silverstein, as trustee under a trust agreement dated January 2, 1974, which, together with Village Green, owned another parcel of property referred to as the "Ingress Parcel," were also parties to the Agreement.  However, for purposes of this dispute, those parties are irrelevant because the issue concerns Village Green's grant of an easement over the Parking Parcel to FNC.

[2]At the time the parties executed the Agreement, FNC was known as Frank's Nursery Sales, Inc. (Certificate of Amendment to the Articles of Incorporation, Pl.'s Reply Br. Ex. B.)  Effective July 31, 1980, Frank's Nursery Sales, Inc. changed its name to Frank's Nursery & Crafts, Inc.  (Id.)  As a result of a series of mergers undertaken during Frank's Nursery & Crafts, Inc.'s second bankruptcy filing, Franks Nursery & Crafts, Inc. emerged from the second bankruptcy as the reorganized debtor under the name FNC Realty Company.  (Certificates of Merger, Pl.'s Reply Br. Exs. C & D; Order Confirming Debtor's 2d Am. Plan of Reorganization Under Chapter 11

The Frank's Parcel contains a building in which FNC formerly operated a Frank's Nursery & Crafts retail store. The customer entrance of the store is adjacent to the Parking Parcel.

In 2001, FNC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, Case Nos. 01-52415 and 01-52416 ("Frank's I"). FNC emerged from Frank's I and resumed operations. In 2004, Frank's again filed for bankruptcy protection under Chapter 11, this time in the United States Bankruptcy Court for the Southern District of New York, Case No. 04-15826 (PCB) ("Frank's II"). The approved plan of reorganization in Frank's II provided for the sale of several parcels of real property, including the Frank's Parcel. Dollar Development and Village Green both submitted offers for the property, and FNC accepted Dollar Development's offer. On August 19, 2005, FNC deeded the Frank's Parcel to Dollar Development. The legal description for the property included the following: "Together with a non-exclusive easement for ingress, egress and parking as evidence by a Parking Easement dated July 16, 1980, recorded August 1, 1980 in Liber 1099, Page 185." (8/19/05 Deed, Pl.'s Br. Supp. Ex. B.) Dollar Development purchased the Frank's Parcel for the purpose of redeveloping it and leasing it to a tenant, (Verified Compl. ¶ 26), which Dollar Development identifies as Dollar Tree Stores ("Dollar Tree"). (Pl.'s Br. Supp. at 4.)

On September 1, 2005, Village Green recorded a Notice of Termination of Parking Agreement with the Kalamazoo County Register of Deeds. The Notice purported to give notice that FNC rejected the Agreement in Frank's II and that as a result of the rejection, the Agreement was terminated. (Notice of Termination, Pl.'s Br. Supp. Ex. C.) On September 2, 2005, Village Green sent a letter to Dollar Development informing Dollar Development that it had recorded the Notice

---

of the Bankruptcy Code at 19 n.2, Pl.'s Br. Supp. Ex. K.)

and that it considered the Agreement terminated as a consequence of FNC's purported rejection. (Letter from Gately to Dollar Development of 9/2/05, Pl.'s Br. Supp. Ex. D.)  On September 29, 2005, Village Green sent a letter to the City of Portage notifying it that Village Green had terminated the Agreement and was contemplating developing the Parking Parcel.  (Letter from Weiner to Erickson of 9/29/05, Pl.'s Br. Supp. Ex. E.)  After that time, the City denied Dollar Development's request for a building permit for its planned redevelopment of the Frank's Parcel.

After receiving notice of Village Green's purported termination of the Agreement, Dollar Development's counsel wrote to Village Green's counsel, responding to Village Green's theory that the Agreement was an executory contract that FNC rejected in Frank's II and demanding that Village Green take certain steps to withdraw its claim that the Agreement was terminated, including providing notice to the City of Portage that the Agreement remains in full force and effect for the benefit of the Frank's Parcel.  (Letter from Page to King of 11/8/05, Pl.'s Br. Supp. Ex. F.)  On November 11, 2005, Village Green, through its counsel, advised Dollar Development that it had not changed its position and would not accede to Dollar Development's demands.  (Letter from King to Page of 11/11/05, Pl.'s Br. Supp. Ex. G.)

Dollar Development filed its complaint in this case on December 30, 2005, along with a motion for temporary restraining order and motion for preliminary injunction.  On January 4, 2006, the Court held an in-chambers conference with counsel, at which the Court and the parties agreed that this case primarily involves legal issues based upon undisputed documentary evidence and that discovery would probably not be necessary in order for the Court to decide the issues, at least with respect to the quiet title claim.  Accordingly, the Court issued an expedited briefing and oral argument schedule for Dollar Development to file a motion for summary judgment, and Dollar

Development withdrew its motion for temporary restraining order and preliminary injunction.[3]
(1/5/06 Order.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

As a preliminary matter, the Court notes that Village Green contends that Dollar Development is not entitled to summary judgment because "[n]o depositions have been taken, no interrogatories exchanged and no requests for admission have been filed." (Def.'s Resp. Br. at 5.) Village Green further notes that several of Dollar Development's factual assertions are not supported by affidavits or sworn testimony, as required by Rule 56(c), and, therefore, any unsupported factual statements must be ignored in considering whether Dollar Development is entitled to summary judgment. First, with regard to the argument concerning discovery, Village Green fails to cite any

---

[3]Contrary to Village Green's assertion, the Court did not reject or deny Dollar Development's motion for temporary restraining order and preliminary injunction.

authority for the propositions that a court may not enter summary judgment if the parties have not

conducted discovery and that discovery is always essential to a court's consideration of a motion

for summary judgment.  To the contrary, "in order to preserve the argument that the grant of

summary judgment was too hasty and precluded necessary discovery, the [complaining party] must

have complied with the strictures of Federal Rule of Civil Procedure 56(f)."  Plott v. Gen. Motors

Corp., 71 F.3d 1190, 1196 (6th Cir. 1995).  Pursuant to that rule, a district court may defer a ruling

on summary judgment if the non-movant submits an affidavit explaining why discovery is necessary,

what material facts it hopes to uncover, and why it has been unable to discover the information.  See

Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000).  Village Green has not filed such

an affidavit in this case.  Second, Village Green is correct that in deciding a summary judgment

motion, a court may not consider allegations unsupported by facts in the record, see Am. Road Serv.

Co. v. Consol. Rail Corp., 348 F.3d 565, 569 (6th Cir. 2003) (citing Anderson, 477 U.S. at 252, 106

S. Ct. at 2512), and that inadmissible evidence may not be used to support or oppose a motion for

summary judgment.  See Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003) ("If the

[offered] comments are deemed to be hearsay, then the evidence could not be considered on

summary judgment.").  Thus, to the extent that Dollar Development relies upon unsupported

*material* facts, the Court will not consider them in its analysis of the claims.

**A.      Quiet Title Claim**

In Count I of its complaint, Dollar Development requests that the Court enter a judgment

determining that Dollar Development's title to the Frank's Parcel includes the easement rights set

forth in the Agreement and confirming that the Agreement establishes a perpetual non-exclusive

easement appurtenant for the benefit of the Frank's Parcel.  In considering this claim the Court is

presented with two issues: (1) whether the easement created in the Agreement is an easement appurtenant or an easement in gross; and (2) if the easement is appurtenant, whether the Frank's I and/or Frank's II bankruptcy proceedings provided a basis for termination for the easement rights under the Agreement. Village Green raises another issue regarding this claim: "Nowhere in the complaint or the brief does the Plaintiff explain who FNC Realty Corporation is and how it got title to Parcel A, if, in fact, it had title." (Def.'s Resp. Br. at 6.) This argument is specious in light of Village Green's admission in its answer that "FNC Realty Corporation, f/k/a Frank's Nursery & Crafts, Inc. owned the real property described in paragraph 6 which is commonly known as 325 Mall Drive, Portage, Michigan." (Answer ¶ 6.) Moreover, Dollar Development has provided evidence showing that FNC is the successor to Frank's Nursery Sales, Inc. through a series of name changes and corporate transactions that occurred in the course of Frank's II.[4] Thus, it is undisputed that FNC owned the Frank's Parcel and any appurtenant easement rights under the Agreement.

1.      **The Agreement Granted an Appurtenant Easement Over the Village Green Parcel.**

"An easement is the right to use the land of another for a specified purpose." Schadewald v. Brule, 225 Mich. App. 26, 35, 570 N.W.2d 788, 794 (1997). Michigan courts recognize two types of easements: easements appurtenant and easements in gross. See Collins v. Stewart, 302 Mich. 1, 4, 4 N.W.2d 446, 447 (1942). An easement in gross is personal in nature and, except in the case of easements for utility and railroad purposes, is not assignable. See Smith v. Dennedy, 224 Mich. 378, 381, 194 N.W. 998, 999 (1923); Johnston v. Mich. Consol. Gas Co., 337 Mich. 572, 580, 60 N.W.2d 464, 468 (1953). An appurtenant easement attaches to the land and is incapable of existence

---

[4]Village Green implies that Dollar Development was somehow negligent in failing to determine what interest FNC had when it purchased the Frank's Parcel, but it is interesting to note that Village Green itself sought to purchase "whatever interest [FNC] had in [the] Frank's Site."

separate and apart from the land to which it is annexed.  See Schadewald, 225 Mich. App. at 35, 570

N.W.2d at 795.  In Smith, the court explained the rules for determining the character of an easement:

> "Ordinarily the intention of the parties is primarily to be determined from the written instrument.  Some courts adhere to the strict rule that the conveyance alone must show that the parties intended the right to be made appurtenant to certain land therein mentioned.  The question cannot be determined from matter aliunde; but the reasonable and prevailing rule is that an easement is appurtenant if so in fact, although not declared to be so in the deed, and that if the intention is not sufficiently expressed this question may be determined by the relation of the easement to the so-called dominant estate, or the absence of it, and in the light of all the circumstances under which the grant was made."  9 R.C.L. 738.
> "As a rule of construction courts favor the appurtenant easements, and if the right in controversy is in its nature an appropriate and useful adjunct to the land conveyed, having in view the intention of the grantee as to its use, there being nothing to show that the parties intended it to be a mere personal right, it should be held to be appurtenant and not in gross, the presumption therefore being in favor of the former where there is a doubt as to the real nature of the grant.  And so an easement is never construed to be in gross when it can fairly be construed to be appurtenant."  9 R.C.L. 741.

224 Mich. at 382, 194 N.W. at 999.  The use of words of inheritance or successorship "is not

necessary to create an easement running with the land," and "[t]he omission of words of inheritance

from the [grant] of the easement does not establish an easement in gross."  Collins, 302 Mich. at 5,

4 N.W.2d at 447-48.  Finally, once an appurtenant easement is granted, it cannot be modified by

either party unilaterally.  See Schadewald, 225 Mich. App. at 36, 570 N.W.2d at 795.

Applying the foregoing rules to the Agreement, the Court has no difficulty concluding that

the Agreement granted an easement that was appurtenant to the Frank's Parcel.  The recitals in the

Agreement specifically note that the parties were executing the Agreement in connection with

Frank's purchase of the Frank's Parcel and that  Village Green "desires to grant Frank's a perpetual,

non-exclusive easement for ingress and egress and parking purposes over and across the PARKING

PARCEL, in order to service the FRANK'S SITE."  The purpose of the easement was to provide

parking and ingress and egress for the benefit of the Frank's Parcel.  Nothing in the Agreement

suggests that Frank's could have used the easement for anything other than the use of the Frank's

Parcel.  "It was of no value, except as it was used in connection with the [Frank's Parcel]."  Smith,

224 Mich. at 384, 194 N.W. at 1000.

Village Green fails to offer any reasonable basis for concluding that the easement was an

easement in gross, and its arguments to the contrary are all without merit.  First, Village Green's

attempt to rely upon the affidavit of Joshua Weiner, who signed the Agreement on behalf of Village

Green, to establish that the Agreement granted an easement in gross, must be rejected because, as

Village Green concedes, "[t]he rights of an easement holder are defined by the easement agreement."

(Def.'s Resp. Br. at 10 (quoting Schadewald, 225 Mich. App. at 38, 570 N.W.2d at 796).)  The terms

of the Agreement are sufficient to establish the character of the easement, and there is no need for

the Court to consider extrinsic evidence regarding the parties' intent.  Second, Village Green

contends that the easement cannot be construed as appurtenant because the easement was granted

to Frank's rather than the Frank's Site.  This argument is nonsensical.  Property rights, including

easement rights, are granted to a party, not a piece of property.  Third, Village Green contends that

the easement must be in gross because the Agreement uses the term "appurtenant" as it relates to

another parcel but does not use the term appurtenant as it relates to the Frank's Parcel.  Village

Green cites no law to support this argument and, in fact, it is contrary to the settled rule in Michigan

that the law favors easements appurtenant over easements in gross, "and a mere personal right will

not be presumed when an easement can be construed as appurtenant to some other estate."  Todd

v. Nobach, 368 Mich. 544, 449, 118 N.W.2d 402, 405 (1962).  Finally, Village Green argues that

the easement cannot be appurtenant because the Agreement imposes continuing financial and

9

performance obligations upon FNC. Village Green asserts that an appurtenant easement cannot exist in such a case because a breach by the grantee of its obligations could result in termination of the agreement. Of course, Village Green has cited no authority for this proposition, and it ignores the fact that the remedy for breach of financial or maintenance obligations is a suit for damages, not termination of the easement. Moreover, at least one Michigan case has impliedly recognized that an easement appurtenant may impose ongoing financial obligations on the dominant estate without affecting the nature of the easement. See Valente v. Butts, No. 246395, 2004 WL 952245, at *3-4 (Mich. Ct. App. ) (affirming the trial court's conclusion that the parties had agreed to the amount of $150 per month for use of an appurtenant easement on the plaintiff's property for waste disposal from the dominant estate).

> 2. **The Agreement is not an Executory Contract that FNC Rejected In Frank's II.**

Village Green's primary argument is that the Agreement is an executory contract that FNC rejected in Frank's II, thus permitting Village Green to unilaterally terminate the Agreement. Village Green's theory fails because neither of its foundational premises – (1) Frank's I determined that the Agreement is an executory contract; and (2) FNC rejected the Agreement in Frank's II – is true.

For bankruptcy purposes, many courts have accepted the definition of an executory contract formulated by Professor Vern Countryman, which is that an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.), __ B.R. __, 2006 WL 354811, at *3 (6th Cir. B.A.P. Feb. 17, 2006) (internal

quotations omitted) (quoting In re Terrell, 892 F.2d 469, 471 n.2 (6th Cir. 1989) (quoting Vern

Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)). Village

Green asserts that Frank's I determined that the Agreement is an executory contract because

Paragraph 6.02 of the debtor's Second Amended Plan of Reorganization stated that the debtor would

assume the executory contracts and unexpired leases listed on Schedule 6.02, and Schedule 6.02 lists

the address of the Frank's Parcel, 325 Mall Drive, Portage, Michigan 49002.  (2d Am. Plan of

Reorganization ¶ 6.02 & Schedule 6.02.)  Village Green also cites an affidavit by Michael McBride,

Frank's Vice President of Legal and Real Estate, submitted in support of the debtor's Thirteenth

Omnibus Objection to Allowance of Certain Claims, as evidence that Frank's considered the

Agreement an executory contract.  Specifically, Village Green relies upon paragraph 9 of the

McBride affidavit, which states: "The claims set forth on Exhibit F to the Objection should be

disallowed and expunged because these claims have already been paid to the Claimants by the

Debtors to cure either an executory contract or lease." (McBride Aff. ¶ 9.)  Village Green notes that

the parties treated the Agreement as an executory contract because Village Green submitted its claim

for unpaid CAM (common area and maintenance) charges and unpaid real estate taxes and the

debtor paid the claim, albeit, in an amount less than the claim, as part of the cure claim process.

Village Green's argument fails because the Order Confirming Debtor's Second Amended Joint Plan

of Reorganization included an express disclaimer that "[l]isting a contract or lease in Schedule 6.02

shall not constitute an admission by the Debtors that such contract or lease, including related

agreements, is an executory contract or unexpired lease or that the Debtors have any liability

thereunder." (5/7/02 Frank's I Order Confirming Debtors' 2d Am. Joint Plan of Reorganization ¶

38.)  Village Green's assertion that this language merely preserved the debtor's right to contest

whether or not contracts listed on Schedule 6.02 were executory contracts must be rejected, because

the language plainly states that the fact that a contract is listed is not determinative of whether it is

actually an executory contract. Moreover, the question of whether a contract is an executory

contract within the meaning of the Bankruptcy Code is a question of federal law. See Griffel v.

Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988). There is no indication that the

bankruptcy court in Frank's I ever determined whether the Agreement is an executory contract, and

because the issue is a question of law for the court to decide, the debtor's characterization of the

Agreement would have no binding effect.

Even if Frank's I determined that the Agreement was an executory contract, the second part

of Village Green's argument, that FNC rejected the Agreement in Frank's II, does not hold water.

Village Green's argument relies upon the following provision of the debtor's second amended plan

of reorganization in Frank's II:

> 7.1    Executory Contracts and Unexpired Leases. On the Effective Date,
> all unexpired leases or executory contracts of the Debtor will be rejected in
> accordance with the provisions and requirements of Section 365 and 1123 of the
> Bankruptcy Code, except those executory contracts and unexpired leases that (a)
> have been assumed by Final Order of the Bankruptcy Court, (b) are the subject of a
> motion to assume pending on the Effective Date, or (c) are assumed pursuant to this
> Plan. Entry of the Confirmation Order shall constitute an order of the Bankruptcy
> Court approving all such assumptions or rejections pursuant to Sections 365 and
> 1123 of the Bankruptcy Code as of the Effective Date.

(Frank's II Debtor's 2d Am. Plan of Reorganization ¶ 7.1.) Village Green notes that the Order

Confirming the Second Amended Plan of Reorganization was entered on June 15, 2005, and that at

that time, the Agreement was not assumed by the order, it was not the subject of a motion to assume

that was pending on the effective date of the plan, and was not assumed pursuant to the plan.

Therefore, Village Green argues, the Agreement was rejected as of July 27, 2005 – the effective date

of the plan. Village Green's argument wholly ignores relevant provisions of the Order Confirming

the Second Amended Plan of Reorganization. In particular, with respect to executory contracts and

unexpired leases, the order provided:

> R.     Executory Contracts and Unexpired Leases. Except as set forth in
> paragraph D above with respect to the leases subject to the Motion, subject to the
> occurrence of the Effective Date, any unexpired lease or executory contract that has
> not been expressly assumed or rejected by the Debtor (*or otherwise treated by the
> Plan*) shall be, and hereby are, deemed to have been rejected by the Debtor. . . .

(6/14/05 Order Confirming Debtor's 2d Am. Plan of Reorganization ¶ R at 20 (italics added).) The

order further provided that "[t]he sale or disposition of each of the properties set forth on Exhibit

A annexed hereto is an essential element of the Plan and such sales or dispositions are in the best

interests of the Debtor, its estate, and all holders of Claims and Interests." (Id. § XXXVII at 12.)

The address of the Franks Parcel – 325 Mall Dr., Portage, Michigan – was one of the properties

listed on Exhibit A. This was the same address listed on Schedule 6.02 in Frank's I. Thus, the

Frank's Parcel and the Agreement were "otherwise treated by the Plan" and were not rejected by

FNC. Moreover, the fact that the Agreement was referenced in the legal description in the deed

from FNC to Dollar Development shows that FNC did not intend to reject the Agreement. In fact,

to have done so would have been contrary to the best interests of the debtor, the estate, and all

holders of claims and interests, because it would have resulted in a lower purchase price than

otherwise could have been obtained. Accordingly, the Court will grant Dollar Development's

motion and deny Village Green's motion.

**B.     Tortious Interference With a Business Expectancy**

Dollar Development contends that it is also entitled to summary judgment on its claim for

tortious interference with a business expectancy. To establish a tortious interference claim, a

plaintiff must show: (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on the existence of a valid contract; (2) the defendant's knowledge of the relationship or expectancy; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. See Health Call of Detroit v. Atrium Home & Health Care Servs., Inc., 268 Mich. App. 83, 90, 706 N.W.2d 843, 849 (2005). The defendant must intentionally commit an act that is either wrongful per se or lawful but unjustified and maliciously done for the purpose of invading another's rights. See Formall, Inc. v. Cmty. Nat'l Bank of Pontiac, 166 Mich. App. 772, 779, 421 N.W.2d 289, 292 (1988). "A 'per se wrongful act' is an act that is inherently wrongful or one that is never justified under any circumstances." Id. at 780, 421 N.W.2d at 293. "To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich., 217 Mich. App. 687, 699, 552 N.W.2d 919, 925 (1996) (per curiam).

The Court concludes that Dollar Development is not entitled to summary judgment on this claim. Dollar Development has established, either through its Verified Complaint or through evidence submitted in support of its motion, that it purchased the Frank's Parcel in order to redevelop it and rent it to a tenant (Dollar Tree, although the identity of the tenant is not disclosed in the verified complaint or in any evidence of record) and that it had contracts and/or a business relationship or expectancy with the tenant. However, Dollar Development has not presented sufficient evidence to establish Village Green's knowledge of the relationship or expectancy. Dollar Development's unsupported assertion that Village Green must have known about Dollar

Development's expectancy is not a substitute for evidence. In addition, whether Village Green's conduct in sending the notice, which, incidentally, was based upon a false assertion of fact and per se wrongful, caused a breach or termination of the expectancy and resulting damage remain questions of fact at this juncture (but which may be proper for summary judgment after discovery). Therefore, the Court will deny summary judgment on this claim without prejudice to renew the motion at a later date.

**C.      Slander of Title**

Dollar Development also contends that it is entitled to summary judgment on its slander of title claim. Under Michigan law, slander of title claims have both a common law and statutory basis. See B & B Inv. Group v. Gitler, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (1998) (per curiam). The elements of both the common law action and the statutory action under M..C.L. § 565.108 are the same: (1) falsity; (2) malice; and (3) special damages. See id. Special damages include damages incurred to remove the cloud from the plaintiff's title. See GKC Mich. Theaters, Inc. v. Grand Mall, 222 Mich. App. 294, 301, 564 N.W.2d 117, 120 (1997). Other special damages include loss of rent or interest and impairment of vendibility. See B & B Inv. Group, 229 Mich. App. at 9, 581 N.W.2d at 20.

Dollar Development has shown that by filing the notice of termination of the Agreement and easement, Village Green published false matter that disparaged Dollar Development's title. Moreover, Dollar Development has shown that Village Green acted with malice because its legal position supporting its claim that the Agreement was terminated based upon FNC's rejection of the Agreement in Frank's II was frivolous and asserted in bad faith for the purpose of interfering with Dollar Development's rights. Finally, Dollar Development is entitled to recover its litigation

15

expenses incurred to have Village Green's notice removed from the records.  See GKC Mich.

Theaters, Inc., 222 Mich. App. at 301, 564 N.W.2d at 120.

The Court concludes that Dollar Development is not entitled to summary judgment on the

issue of lost rents and other items of damages because Dollar Development has not presented

evidence supporting its claim for such damages.  In GKC Michigan Theaters, the court observed that

there was a direct causal link between the defendant's filing of the notice of termination of easement

and the subsequent litigation to declare the notice invalid, thus establishing the plaintiff's claim for

recovery of expenses to clear its title.  See id. at 301-02, 564 N.W.2d at 120.  However, applying

the substantial factor test of the Restatement of Torts, 2d, which requires proof that the

disparagement affected the potential purchaser's or lessee's decision, the court held that there was

a question of fact regarding whether the filing of the notice of termination was a substantial decision

in the purchaser's decision to delay the sale of the property.  See id. at 302-05, 564 N.W.2d at 120-

21.  The court reasoned that "there were issues of material fact regarding whether the filing of the

invalid notice of termination was a substantial factor in the purchaser's decision to delay the sale

of the property."  Id. at 304-05, 564 N.W.2d at 121.  The Court concludes that summary judgment

would be improper on Dollar Development's claim for lost rents/profits and other damages resulting

from the delay caused by the invalid notice not because the evidence is in conflict, but because

Dollar Development has not presented sufficient evidence at this point to establish those damages.

Therefore, the Court will grant summary judgment to Dollar Development only in part on this claim.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Dollar Development's motion for summary

judgment with respect to the quiet title claim, deny the motion with respect to the tortious

16

interference claim, and grant in part and deny in part the motion with respect to the slander of title

claim.  The Court will also deny Village Green's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  March 8, 2006                                      /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE